# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| WILLIAM BURMAN, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Civil Action No. 5:18-CV-429-XR |
| STATE FARM LLOYDS, | § § § | |
| *Defendant*, | § § § | |

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

On this date, the Court considered Defendant State Farm Lloyds' Motion for Partial Summary Judgment (docket no. 25), Plaintiff William Burman's Motion for Partial Summary Judgment (docket no. 22), and the corresponding responses and replies. After careful consideration, the Court GRANTS Defendant's motion and DENIES Plaintiff's motion.

## BACKGROUND

This insurance dispute stems from Plaintiff William Burman's claim for damage caused by a water leak. Burman insured his residential property at 12002 Rose Blossom Street through a policy issued by Defendant State Farm Lloyds ("State Farm"). After Burman reported a plumbing leak on February 26, 2016, he made a claim with State Farm, and State Farm paid for several repairs, most of which are not at issue (for water damage to flooring, for example). The only payment at issue relates to the foundation.

State Farm retained engineer Oscar Lara of Lara Engineering to determine whether the leak caused the foundation to move. Lara's report, from May 12, 2016, stated "that the observed foundation movements are primarily the result of seasonal moisture changes, and vegetation

1

effects. However, the domestic water line leaked identified and repaired by [American Leak Detection] did exacerbate the foundation movements in an isolated area of the residence."

State Farm paid to repair cosmetic damage from foundation movement that fell within this "zone of influence," as determined by Lara. Burman claims State Farm should pay for foundation underpinning, which he claims was needed for damage caused by the plumbing leak. Lara determined the foundation problems predated the leak and the leak damage did not warrant underpinning, so, State Farm denied Burman's claim for underpinning the foundation.

Burman retained engineer Moises Cruz of A-1 Engineering, who concluded that the foundation required underpinning because of the leak. Lara, in reviewing Cruz's report, noted Cruz identified other possible causes of foundation movement, reported that cracks pre-dating the leak had worsened, and reported that the dome shape of the foundation indicated a long-term problem. This review caused State Farm to reaffirm its denial.

Based on this denial, Burman brought this action on April 3, 2018, in the 150th Judicial District Court for Bexar County, Texas. Docket no. 1. He brings claims for breach of contract and violations of the Texas Deceptive Trade Practices Act ("DTPA") and Texas Insurance Code. Docket no. 14. State Farm removed to this Court on May 8, 2018. Docket no. 1. Here, the parties filed cross-motions for summary judgment, seeking an interpretation of the policy terms. Further, State Farm moves for summary judgment on Burman's extra-contractual claims.

## DISCUSSION

I. **Applicable Law**

   a. **Standard of Review**

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R.

Civ. P. 56(a). To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the non-moving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the non-movant's claim or defense. *Lavespere v. Niagra Machine & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the movant carries its initial burden, the burden shifts to the non-movant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991).

In order for a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the non-movant, or, in other words, that the evidence favoring the non-movant is insufficient to enable a reasonable jury to return a verdict for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.4 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the non-movant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the non-moving party, *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

## II. Application

The parties bring cross-motions for summary judgment on the policy terms relevant to the foundation damage. The Court will first decide this issue, and then turn to State Farm's motion for summary judgment on the extra-contractual claims.

### a. Policy Liability Limit

#### i. Insurance Policy Interpretation

In a diversity case like this one, the Court applies Texas law. *Jimenez v. State Farm Lloyds*, 968 F.Supp. 330, 332 (W.D. Tex. 1997) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Under Texas law, the general rules of contract construction apply to insurance policies. *Sharp v. State Farm Fire & Cas. Ins. Co.*, 115 F.3d 1258, 1260 (5th Cir. 1997) (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995)). The court strictly construes ambiguities against the insurer, *id*. at 1260–61, and whether the contract is ambiguous is a question of law for the court to decide, *Nat'l Union Fire Ins. Co.*, 907 S.W.2d at 520 (citing *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983)). The court looks first to the contract's language, and "[w]hen there is no ambiguity, it is the court's duty to give the words used their plain meaning." *Sharp*, 115 F.3d at 1261.

#### ii. The Policy Terms

Burman's policy provides, in relevant part:

**SECTION I LOSSES INSURED**

**COVERAGE A—DWELLING**

> We insure for accidental direct physical loss to the property described in Coverage A, except as provided in SECTION I–LOSSES NOT INSURED.

Docket no. 25-1 at 0034.

Section I Losses Not Insured provides:

4

**SECTION I LOSSES NOT INSURED**

1. We do not insure for any loss to the property described in Coverage A which consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through n. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these: . . .

l. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundation, walls, floors, roofs or ceilings; . . . .

*Id.* at 0036.

The Dwelling Foundation Endorsement ("DFE") amended the policy as follows:

**Dwelling Foundation Coverage.** We cover loss caused by and consisting of settling, cracking, shrinking, bulging, or expansion of the foundation, floor slab or footings that support the dwelling caused by seepage or leakage of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system.

This coverage includes the cost of tearing out and replacing any part of the building necessary to repair the system from which the leakage or seepage occurred.

We do not cover loss to the system from which the water or steam escaped.

**Limit of Liability.** Our limit of liability for this coverage will not exceed an amount equal to 15% of the COVERAGE A—DWELLING limit applicable on the date of loss.

*Id.* at 0008.

### iii. Application

At summary judgment, the parties ask that the Court construe the policy at issue. Both motions center on the same issue: whether the claimed foundation damage is covered by Coverage A or whether it falls in an exclusion. If it is not covered by Coverage A, the DFE provides the sole coverage for Burman's foundation damage. If the DFE provides the sole coverage, the DFE's limit of liability applies and any damages Burman is awarded on his breach of contract claim, if successful, must be limited to 15 percent of the dwelling limit. This amounts to $24,705.

Here, the Court finds the policy language clear and unambiguous. Another court interpreting these same provisions reached the same conclusion. *See Salazar v. State Farm Lloyds*, No. H-13-1904, 2014 WL 2862760 (S.D. Tex. June 24, 2014). In *Salazar*, the plaintiffs argued that the DFE did not control where plumbing leaks—combined with drought conditions—caused foundation movement. *Id.* at *2. The court rejected this argument, concluding that "[t]he DFE explicitly and unambiguously limits liability for foundation damage to an amount not exceeding '15% of the Coverage A—Dwelling limit benefits.'" *Id.* at *4; *see also Walker v. Nationwide Prop. and Cas. Ins. Co.*, 992 F. Supp. 2d 703, 707 (W.D. Tex. 2014) (concluding a similar DFE was unambiguous and limiting recovery to the 15 percent DFE limit).

Burman tries to distinguish *Salazar* by noting that the cause of the foundation movement was multiple leaks, not a single leak (as here). Docket no. 30 at 5. But as State Farm correctly notes, the cause of the foundation movement "does determine whether the [DFE] applies; however, it is irrelevant to the issue before the Court on the Cross-Motions for Summary Judgment." Docket no. 31 at 4. These motions ask the Court only to determine whether the DFE is the sole coverage for foundation movement under the policy and whether the DFE's liability limit applies to Burman's claim for damages from foundation movement. *Id.* at 5.

Having reviewed the policy and the record, the Court concludes that the DFE is the only such coverage and its liability limit applies here. The damage on which Burman's contractual claim is predicated (the "dome" in Burman's foundation, which Burman claims was caused by the plumbing leak and State Farm claims is a long-term condition) is not covered by Coverage A. This is because Section 1 under Losses Not Insured excludes damage caused by "settling, cracking, shrinking, bulging, or expansion of . . . foundation . . . ." A plain reading of the policy shows foundation movement is covered only by the DFE.

Thus, Burman's damages, if any, for State Farm's alleged breach of contract are limited to 15 percent of the Coverage A – Dwelling limit, which is $24,705. State Farm is also entitled to an offset for amounts already paid regarding the foundation.

### b. Extra-contractual Claims

Next, the Court considers State Farm's motion for summary judgment on Burman's other claims. In addition to the claim for breach of contract, Burman's amended complaint brings claims for "bad faith, unfair settlement practices of the Insurance Code § 541, and violations of the Deceptive Trade Practices Act including but not limited to 17.46(b)(5)(6)(7)(12)(13) and (20) and 17.50 as well as under the tie-in provisions relevant to the Insurance code." Docket no. 27 at 5.

#### i. Misrepresentations Under the Insurance Code

Burman alleges that State Farm employees made promises of coverage that State Farm did not satisfy, and that these statements are "affirmative misrepresentations made in the claim settlement process." Docket no. 27 at 5. Coupled with Burman's citation to Chapter 541 (without reference to any specific provision), the Court construes the claim as alleging a violation of Section 541.060(a)(1). This provision prohibits "misrepresenting to a claimant a material fact of policy provision relating to coverage at issue." TEX. INS. CODE § 541.060(a)(1). Further, Burman contends State Farm violated several provisions of the DTPA. Docket no. 27 at 5 (alleging violations of TEX. BUS. & COMM. CODE § 17.46(b)(5), (6), (7), (12), (13), and (20)).

There is no evidence at summary judgment, however, that State Farm made any specific misrepresentations or that Burman detrimentally relied on any misrepresentation. Nor is there evidence that any misrepresentation caused Burman's damages. *See Griggs v. State Farm Lloyds*, 181 F.3d 694, 701 (5th Cir. 1999) ("[B]oth the Insurance Code and the Deceptive Trade

7

Practices Act require proof that the defendant's conduct was the cause in fact of actual damages.")). As State Farm notes, Burman admitted at deposition that State Farm did not tell him anything untrue or false, docket no. 25-18 at 30, and Burman's response does not point to any misrepresentations, much less offer evidence of them. Thus, the Court grants summary judgment on these claims.

### ii. Statutory and Common Law Claims Related to Unfair Settlement Practices

Next, Burman, bringing statutory and common law claims, alleges State Farm committed unfair settlement practices. Under Texas law, breach of the common law duty of good faith and fair dealing "focuses not on whether the claim was valid, but on the reasonableness of the insurer's conduct" in handling the claim. *Lyons v. Millers Cas. Ins. Co. of Tex.*, 866 S.W.2d 597, 601 (Tex. 1993)). Thus, "an insurer will be liable if the insurer knew or should have known that it was reasonably clear that the claim was covered." *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 50–51 (Tex. 1997) "Evidence that shows only a bona fide coverage dispute does not rise to the level of bad faith." *Douglas v. State Farm Lloyds*, 37 F. Supp. 2d 532, 537 (S.D. Tex. 1999) (internal citation omitted).

As to statutory claims, "[t]he Texas Insurance Code and the Deceptive Trade Practices Act are in large measure statutory fleshings-out of the already existing, common law requirements." *Robinson v. State Farm Fire & Cas. Co.*, 13 F.3d 160, 162 (5th Cir. 1994). Extra-contractual tort claims under the Texas Insurance Code and DTPA "require the same predicate for recovery as bad faith causes of action in Texas." *Higginbotham v. State Farm Mut. Ins. Co.*, 103 F.3d 456, 460 (5th Cir. 1997). Thus, "in order to establish a statutory violation under the Insurance Code or the DTPA, the elements necessary to demonstrate an insurer's breach of the

common law duty of good faith and fair dealing must be proven." *Douglas*, 37 F. Supp. 2d at 544.

Here, the record at summary judgment indicates no more than a "bona fide coverage dispute." In response to State Farm's motion, Burman argues

> [t]here exists no *bona fide* dispute that the foundation needed repair and that it moved because of the leak. At the time of the denial all experts agreed upon that fact. The water leak caused the need for the repair. The proper repair is complete underpinning. At the time of the denial by State Farm to repair the foundation, there was no evidence to support the denial. . . . Since State Farm paid for foundation movement there is no justification for the denial of the foundation repair.

Docket no. 30 at 7.

Oscar Lara's report agreed that the leak caused some foundation movement, but that the primary cause was long-term movement due to seasonal changes and vegetation effects. After reviewing Cruz's report, Lara also agreed that if the foundation were repaired, a full underpinning was recommended. As State Farm notes, however, "[t]his is not the same as saying that the foundation needed to be repaired or more particularly that it needed to be underpinned because of the plumbing leak." Docket no. 31 at 7.

Further, State Farm cites *State Farm Lloyds v. Nicolau*, in which the Texas Supreme Court stated that while "evidence showing only a bona fide coverage dispute does not, standing alone, demonstrate bad faith," it is also true "that an insurer's reliance upon an expert's report, standing alone, will not necessarily shield the carrier if there is evidence that the report was not objectively prepared or the insurer's reliance on the report was unreasonable." 951 S.W.2d 444, 448 (Tex. 1997).

Burman's assessment of the expert reports is incorrect—there was a bona fide coverage dispute and there is no indication that State Farm knew or should have known that coverage was

reasonably clear. Further, Burman introduces no evidence that Lara's report was not objectively prepared or that State Farm's reliance on it was unreasonable. Even construing the evidence in Burman's favor, then, no reasonable factfinder could find that State Farm committed unfair settlement practices. Thus, the Court grants summary judgment for State Farm on Burman's common law and statutory unfair settlement practices claims.

Finally, Burman seeks additional damages for "knowing" violations of the Insurance Code and DTPA, but since Burman's statutory claims fail, his claims for "knowing" statutory violations also fail. And under the same reasoning, the Court grants summary judgment for State Farm as to any claims for exemplary damages related to bad faith insurance practices, to the extent Burman's amended complaint raises such claims.

## CONCLUSION

Defendant State Farm's motion for partial summary judgment (docket no. 25) is GRANTED and Plaintiff Burman's motion for partial summary judgment (docket no. 22) is DENIED. Accordingly, only Burman's breach of contract claim remains.

It is so ORDERED.

SIGNED this 4th day of April, 2019.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE